**Nancie K. Potter, OSB No. 80152**
E-mail: pottn@fosterpdx.com
FOSTER PEPPER LLP
601 SW Second Avenue, Suite 1800
Portland, OR  97204-3171
Telephone:  (503) 221-7750
Facsimile:  (503) 221-1510

**Kenneth B. Chaiken, Texas State Bar No. 04057800**
E-mail: KChaiken@chaikenlaw.com
Chaiken & Chaiken, P.C.
13355 Noel Road, Suite 600
One Galleria Tower
Dallas, TX  75240
Telephone:  (214) 265-0250
Facsimile:  (214) 265-1537
Admitted *Pro Hac Vice*

**Jeffrey S. Levinger, Texas State Bar No. 12258300**
E-mail: jlevinger@ccsb.com
Carrington Coleman Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, TX  75202
Telephone:  (214) 855-3000
Facsimile:  (214) 855-1333
*Pro Hac Vice* Admission Pending

          Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| AERO AIR, L.L.C., an Oregon limited Liability company, | ) ) | Case No.  CV-07-283-ST |
| Plaintiff, | ) | |
| v. | ) ) | PLAINTIFF AERO AIR L.L.C.'S RESPONSE TO DEFENDANT'S MOTION |
| SINO SWEARINGEN AIRCRAFT CORPORATION, a Delaware corporation, | ) ) | TO VACATE EX PARTE ORDER AND STAY PROCEEDINGS |
| Defendant. | ) ) | |
| | ) | |

# TABLE OF CONTENTS

Page No.

TABLE OF CONTENTS ........................................................................................................ i

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND....................................................................2

ARGUMENT AND AUTHORITIES .......................................................................................7

      I.     This Court Has Subject Matter Jurisdiction and Is a Proper Venue. .............................7

      II.    SSAC Overstates the Texas Forum's Connection to Aero's Motion to Vacate. .........10

           A.     An Action to Vacate or Confirm an Award is a New and Independent Cause Action. ..................................................................................................11

           B.     SSAC's "First-Filed" Argument Is Irrelevant and Erroneous. ...........................13

           C.     The Texas Court Has Taken No Action on SSAC's Motion to Confirm. ..........15

           D.     For Enforcement of the Award, Oregon is the Most Relevant Forum...............16

III.    The Colorado River Abstention Doctrine Does Not Require, or Permit, this Court to Stay or Dismiss Aero's *Vacatur* Action.................................................................18

           1.     This Court first assumed jurisdiction over the arbitration award. .....................21

           2.     This Court is a more convenient forum for enforcement proceedings. ..............21

           3.     This Court's exercise of jurisdiction will not result in any "undesirable" piecemeal litigation...................................................................................23

           4.     This Court has engaged in the only valid activity regarding enforcement of the Award. .................................................................................25

           5.     The applicability of the FAA offsets the Texas choice of law clauses................25

           6.     The Texas state court proceedings may not be adequate to protect Aero's rights.......................................................................................27

           7.     Aero's federal court action is not an attempt to forum shop; if anyone is forum shopping, it is SSAC. ......................................................................29

           8.     Aero's federal court action was not filed in an attempt to avoid adverse rulings by a state court. .................................................................................34

IV.    This Court's Stay Order Should Remain in Place Because It Was Authorized by 9 U.S.C. § 12.....................................................................................................35

CONCLUSION....................................................................................................................37

# TABLE OF AUTHORITIES

Page No.

## Federal Cases

*American Bankers Life Assurance Co. of Florida v. Overton*, 2005 WL 943522
(5th Cir. 2005) ................................................................. 12, 21, 25

*Bank One, N.A. v. Boyd*, 288 F.3d 181 (5th Cir. 2002) ............................. 30

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)............... passim

*Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193 (2000)................. passim

*County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185 (1959) ............................ 17

*Garber v. Sir Speedy, Inc.*, 1996 WL 734947 (N.D. Tex. Dec. 11, 1996)................... 18

*Glendora v. Anderson*, 2003 WL 202108 (9th Cir. Jan. 24, 2003)................................. 9

*Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79 (2000).................................... 11

*HCC Aviation Ins. Group, Inc. v. Employers Reinsurance Corp.*, 2005
WL 1630060 (N.D. Tex. June 30, 2005) ................................. 11, 20, 21

*Hinman v. Fujitsui Software Corp.*, 2006 WL 358073 (N.D. Cal. Feb. 13, 2006)..................... 19

*In the Matter of the Arbitration Between IFC Interconsult, AG and Safeguard
Int'l Partners, LLC*, 334 F. Supp. 2d 777 (E.D. Pa. 2004), *aff'd in part, rev'd
in part on other grounds*, 438 F.3d 298 (3d Cir. 2006) ............................ 19, 20, 24

*Johnston Lemon & Co. v. Smith*, 882 F. Supp. 4 (D.D.C. 1995) ................................. 20

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)............................................ 8

*LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702 (D.C. Cir. 2001) ......................... 13

*Manion v. Nagin*, 2003 WL 21459680 (D. Minn. June 20, 2003), *aff'd*, 392 F.3d
294 (8th Cir. 2004) ............................................................. 13

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) ......................... 27

*McClellan v. Carland*, 217 U.S. 268 (1910)................................................. 16

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 2006 WL 466652 (9th Cir.
Feb. 24, 2006) ................................................................. 11, 22

*Merritt-Chapman & Scott Corp. v. Frazier*, 289 F.2d 849 (9th Cir. 1961)............................ 25, 26

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)................... 17, 18, 26

*Myer v. Americo Life, Inc.*, 2005 WL 3007117 (W.D. Mo. Nov. 8, 2005) ................................ 19

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989)............................................ 18, 26

*NitGen Co. v. SecuGen Corp.*, 2004 WL 2303929 (N.D. Cal. Oct. 12, 2004) ........... 19, 25, 30, 31

*Paul Revere Variable Annuity Ins. Co. v. Thomas*, 66 F. Supp. 2d 217 (D. Mass.
1999), *aff'd*, 226 F.3d 15 (1st Cir. 2000)................................................. 31

30129323.01

*Phillip Diniaco & Sons, Inc. v. Max J. Colvin & Sons Trucking, Inc.*, 1988 WL 137336  (6th Cir. Dec. 23, 1988) ......................................................... 19

*Republic Ins. Co.*, 1994 WL 548233 (N.D. Ill. Oct. 5, 1994) ............................ 20, 22, 24

*Smart v. Sunshine Potato Flakes*, L.L.C., 307 F.3d 684  (8th Cir. 2002) .................... 13

*U.S. Life Ins. Co. v. Ins. Commissioner of California*, 2005 WL 3150262 (9th Cir. 2005) ........................................................................... 23

*Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332  (4th Cir. 2002) ..................... passim

**State Cases**

*America Online, Inc. v. Williams*, 958 S.W.2d 268 (Tex. App. – Houston [14th Dist.] 1997, no pet.) ...................................................... 13

*Amrhein v. La Madeleine, Inc.*, 206 S.W.3d 173  (Tex. App. – Dallas 2006, no pet. h.) .................................................................... 13, 23

*Gannon v. Payne*, 706 S.W.2d 304 (Tex. 1986) ........................................ 27

*Greenberg v. Brookshire*, 640 S.W.2d 870 (Tex. 1982) ................................ 14

*Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256  (Tex. App. – Houston [1st Dist.] 2005, pet. denied) ........................................ 9

*In re Bridges*, 28 S.W.3d 191  (Tex. App. – Fort Worth 2000, no pet.) ................. 15

*In re Kimball Homes Tex., Inc.*, 969 S.W.2d 522 (Tex. App. – Houston [14th Dist.] 1998, no pet.) ......................................................... 13, 23

*In re Sino Swearingen Aircraft Corp.*, No. 05-03-01618-CV, 2004 WL 1193960 (Tex. App. – Dallas June 1, 2004) ........................................... 3

*J.D. Edwards World Solutions Co. v. Estes, Inc.*, 91 S.W.3d 836 (Tex. App. – Fort Worth  2002, pet. denied) ............................................... 9

*Lumbermens Mut. Cas. Co. v. Garza*, 777 S.W.2d 198  (Tex. App. – Corpus Christi 1989, orig. proceeding) .......................................... 13

*Permanente Med. Ass'n v. Johnson*, 917 S.W.2d 515 (Tex. App. – Waco 1996, orig. proceeding) ...................................................... 13

*United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840  (Tex. App. – Corpus Christi 1999, pet. denied) ........................................ 13, 23

Page No.

**Federal Statutes**

28 U.S.C. § 1332 ........................................................................................................ 7

9 U.S.C. § 1 ............................................................................................................... 7

9 U.S.C. § 9 ........................................................................................... 24, 28, 32, 33

9 U.S.C. § 10 ...................................................................................................... 10, 11

9 U.S.C. § 12 ..................................................................... 2, 5, 15, 24, 28, 32, 33

**Other Authorities**

U.S. Const. art. IV, § 1 ............................................................................................ 27

Local Rule 2, Bexar County, Texas District Courts ................................................... 5

Local Rule 3A, Bexar County, Texas District Courts ................................................. 5

## <u>INTRODUCTION</u>

There is no question that this Court has jurisdiction and venue over Aero's motion to vacate the arbitration award under the Federal Arbitration Act. Indeed, the parties' contracts expressly allow arbitration awards to be enforced in any court of competent jurisdiction, and the Supreme Court has confirmed that that court need not be in the district where the arbitration award was rendered. In now arguing that this Court should "abstain" from exercising its undisputed jurisdiction in favor of Texas state courts, SSAC relies on legally irrelevant pre-award occurrences in Texas in order to improperly magnify the role of Texas in the post-award proceedings. Contrary to SSAC's premise, the fact that suit was initially filed and arbitration was compelled in Texas has no bearing whatsoever on where *post-arbitration* challenges should be heard. And even though SSAC filed a motion to confirm the award in Texas, it initially filed that motion in an abated lawsuit that was later dismissed, and then tried to cure that infirmity by filing a second motion on the same day that Aero moved for *vacatur* in this Court. SSAC's confirmation efforts in Texas have not progressed beyond a state judge announcing his intention to hear SSAC's confirmation motion in utter disregard of a previous stay issued by this Court.

Given Aero's right to file a motion to vacate in Oregon, the nexus between the award and Oregon, and the absence of any legitimate activity in Texas regarding confirmation, there is no reason or justification for this Court to abstain under the *Colorado River* doctrine -- "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (internal quotation marks and citations omitted). In fact, doing so would impermissibly rewrite the parties' contracts to make venue over post-award proceedings

mandatory in Texas -- a result that would also fly in the face of Supreme Court precedent.  And because abstention is plainly unwarranted, the Court should continue its stay under 9 U.S.C. § 12 in order to effectuate the FAA's policy that motions to vacate arbitration awards should be resolved before motions to confirm may be considered.

## <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

Aero was a member of SSAC's aircraft distributor network for over 12 years, during which time it fully performed all of its contractual obligations.  That included generating ten very profitable sales orders that would have yielded substantial commissions to Aero, once SSAC fulfilled its contractual obligations to produce the ordered aircraft.  In February 2003, before fulfilling those obligations, and to avoid its obligations to Aero and its fellow distributors (none of whom had produced as many aircraft orders as Aero), SSAC unilaterally terminated, or "cancelled," all of its distributor agreements and the orders those distributors had produced via a single form letter.

The underlying case between Aero and SSAC involved three separate contracts:  an Aircraft Purchase Agreement, a Distributor Agreement, and an Authorized Service Center Agreement.  Only the Distributor Agreement and the Service Center Agreement contained an express arbitration clause.  (Affidavit of Nancie K. Potter in Support of Plaintiff's Motion to Vacate Arbitration Award ("Potter Aff."), Ex. 4, pp. 7-8 and Ex. 5, p. 10.)  That arbitration clause called for an AAA arbitration in San Antonio of "any claim or controversy arising out of [the] Agreement or the breach, termination, or validity thereof," with "Agreement" defined only as the specific contracts that contained the arbitration clause.  (*Id.*)  But while the parties agreed on a venue for arbitration proceedings, they specifically left open the venue for post-proceeding

motions.  In fact, they expressly agreed that "[a] judgment for enforcement of the award may be entered in *any* court having jurisdiction."  (*Id.*)  (emphasis added).

SSAC was sued by a group of distributors in Dallas, Texas after SSAC unilaterally cancelled all the agreements.  Aero was not a member of that group.  Sensing that Aero was going to commence its own litigation, and failing to comply with a contractual pre-litigation negotiation requirement, SSAC commenced an arbitration against Aero seeking the adjudication of claims relating to all three of its agreements with Aero.

On May 2, 2006, Aero filed the first of two state court lawsuits in the 57th District Court of Bexar County, Texas, asserting its claims against SSAC under only the Aircraft Purchase Agreement, while conceding that claims under the other agreements were arbitrable.[1]  In filing suit for a breach of the Aircraft Purchase Agreement, Aero relied upon a Dallas Court of Appeals' opinion rejecting SSAC's arguments that the arbitration clause in the Distributor Agreement encompassed claims under the Aircraft Purchase Agreement, which had no arbitration clause.  *In re Sino Swearingen Aircraft Corp.*, No. 05-03-01618-CV, 2004 WL 1193960 (Tex. App. – Dallas June 1, 2004).  Aero was making the same argument that the identical arbitration clause in its Distributor Agreement did not require arbitration of claims under the Aircraft Purchase Agreement.  The Bexar County district court nonetheless compelled arbitration of the Aircraft Purchase Agreement claims, and stayed the first lawsuit pending arbitration.  The San Antonio Court of Appeals later denied Aero's petition for writ of

---

[1]  On August 29, 2006, Aero filed a second lawsuit in the 285th District Court of Bexar County, Texas, alleging claims relating to the possible formation of a new and independent contract to reinstate the unilaterally terminated contracts.  The San Antonio Court of Appeals, without explanation, denied Aero's request to stay arbitration of the issues presented in the second lawsuit, but no court actually evaluated the arbitrability of those claims.

mandamus, declining to follow the prior holding of the Dallas Court of Appeals interpreting an identical arbitrability question under the very same contracts.

On December 21, 2006, the AAA panel issued a so-called Final Arbitration Award. (Potter Aff., Ex. 1)  The award granted no affirmative relief to SSAC, except for $55,000 in attorneys' fees.[2]  (*Id*. at pp. 5-6.)  On the other hand, the award provided substantial relief to Aero relating to two of SSAC's scheduled aircraft sales and, depending on future developments, potentially unlimited sales commissions in connection with aircraft sales in Aero's 7-state territory under the Distributor Agreement, which includes Oregon and six other states in the Pacific Northwest:

> [A]t the current time the sole future "commissions" Aero may be entitled to receive based on past aircraft orders are the 7% discount on the orders of the SJ30-2 by H&A Services, L.L.C. and Deseret [sic] Sky Development, L.L.C., and a 3% service fee on such final sales if the primary base of operation of the aircraft upon delivery are within Aero's 7-state territory defined the Distributorship Agreement.  Such discount and service fee will be due and payable by SSAC to Aero once SSAC has received payment for the aircraft from, and SSAC has delivered the aircraft to, either of the two customers named above."

(*Id*.)  The arbitration, however, manifestly disregarded the law and facts in denying Aero the full extent of the relief to which it was entitled.

Without moving to lift the state court's order staying the first lawsuit pending arbitration, SSAC filed an application to confirm the arbitration award on January 5, 2007.  (Affidavit of Kenneth L. Chaiken in Support of Plaintiff Aero Air L.L.C.'s Reponse to Defendant's Motion to Vacate Ex Parte Order and Stay Proceedings ("Chaiken Aff."), Ex. 4.)  On January 5, 2007,

---

[2]  The propriety of the award of such fees, in light of the Dallas Court of Appeals opinion and otherwise, is one of the subjects of Aero's motion to vacate in this Court.

SSAC also filed a motion in the arbitration to modify the same award it sought to confirm via its motion in the first lawsuit. (*Id.* at Ex. 1.) The arbitration panel issued an order dated February 8, 2007, denying SSAC's motion. (*Id.* at Ex. 2.)

On February 13, 2007, Aero filed a non-suit of the first lawsuit. (*Id.* at Ex. 5.)

On February 14, 2007, Aero filed with this Court Plaintiff's Motion to Vacate Arbitration Award. Aero also filed an ex parte motion to stay confirmation of the award pursuant to 9 U.S.C. § 12, expressly citing an upcoming hearing in the Texas state scheduled for court the next day. Without a hearing, this Court granted the motion to stay on February 14.

Also, on February 14, 2007, SSAC filed another application for confirmation of the arbitration award in the second lawsuit, although SSAC previously had filed a motion to transfer and consolidate the second lawsuit into the first lawsuit. (*Id.* at Ex. 6.) SSAC, once again, did not file a motion to lift the stay pending arbitration that had been issued in the first lawsuit.

Despite being notified of this Court's February 14 stay on February 15, 2007, SSAC proceeded with a hearing on its application to confirm and its motion to transfer and consolidate in the dismissed first lawsuit. (*Id.* at Ex. 9, pp. 3-4.) Under the Bexar County Local Rules, the 13 district court judges rotate monthly as Presiding Judge. (*Id.* at Ex. 11, p. 1.) Each week, three other judges are assigned to assist the Presiding Judge. (*Id.*) For motion practice, all parties appear before the Presiding Judge, who either hears the motion or assigns the motion to one of the other assisting judges. (*Id.*) On February 15, SSAC's motions were randomly assigned to Judge Michael P. Peden -- a judge who had never had any previous involvement in either the first lawsuit or the second lawsuit (although the second lawsuit technically was assigned to his Court, an assignment that has no real meaning under the rotating docket system).

At the February 15 hearing, after Aero made Judge Peden aware of this Court's stay order, SSAC emphatically argued that "[t]here is no jurisdiction up in Oregon," asserting that Texas venue rules supposedly mandate that a challenge to the arbitration award be filed in Texas state court in San Antonio. (*Id.* at Ex. 9, pp. 9-10.) SSAC portrayed the proceeding in this Court as an attempt to "go to the Ninth Circuit and get some Left Coast law," and described this Court's stay order as "not clear from the face of his order that he procured anything." (*Id.* at pp. 8 and 38.) Despite this Court's stay, Judge Peden concluded that he had jurisdiction, and SSAC's counsel said that he was "prepared to . . . proceed on the merits."[3] (*Id.* at Ex. 9, p. 51.) Judge Peden, in turn, stated that "We're going to hear the application to confirm." (*Id.* at p. 53) Judge Peden's eagerness to proceed in the face of this Court's stay apparently surprised even SSAC's counsel, who immediately proposed a continuance of the hearing. (*Id.* at p. 52) Judge Peden intends to personally preside over the rescheduled hearing, instead of having the case reassigned through the normal rotating docket procedure required by the Bexar County Local Rules. (*Id.* at pp. 53-54.) And he is doing so even though the now consolidated cases (per his order) are technically assigned to the judge of a different court, the 57th District Court. (*Id.* at Ex. 8, p. 2.)

Other than the February 15, 2007 hearing, in which no one presented any arguments on the merits of either vacating or confirming the award, no court in Texas has presided over *any* post-award litigation activities. This Court, by contrast, has read Aero's motion to vacate and held a telephone hearing on February 26 to discuss a briefing schedule on SSAC's motion to vacate the stay and to stay this proceeding. Furthermore, this Court, via its independent review

---

[3] Judge Peden also ignored the fact that Aero had previously non-suited the first lawsuit, and ordered that the second lawsuit be consolidated into the dismissed first lawsuit. (Chaiken Aff., Ex. 8, p. 2.)

of Aero's motion to stay, has affirmatively decided that preserving the status quo, and staying the award's confirmation, is appropriate.

## ARGUMENT AND AUTHORITIES

**I.      This Court Has Subject Matter Jurisdiction and Is a Proper Venue.**

There is no reasonable dispute that this Court has subject matter jurisdiction over Aero's application to vacate the arbitration award.  Aero is an Oregon limited liability company with its principal place of business in Oregon, and SSAC is a Delaware corporation with its principal place of business in Texas.  This Court therefore has diversity jurisdiction under 28 U.S.C. § 1332.[4]

Further, the United State Supreme Court's decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193 (2000), establishes that this Court is a proper venue for Aero's application to vacate the award.  In *Cortez*, the Court analyzed the Federal Arbitration Act's venue provisions for confirmation or *vacatur* of an arbitration award.  The Court held that the FAA's venue provisions are permissive, which means that a motion for *vacatur* of an arbitration award may be filed in any district where venue is proper under the general venue statute.  *Id.* at 204.  The Court specifically noted the need for parties to have the flexibility to seek *vacatur* or modification of an award somewhere other than the district in which the award was rendered:

> The parties may be willing to arbitrate in an inconvenient forum, say, for the convenience of the arbitrators, or to get a panel with

---

[4]  It is also undisputed that the FAA is applicable to the parties' arbitration agreement and to the parties' post-arbitration actions because the contracts containing the parties' arbitration agreement evidence a transaction that involves or affects interstate commerce.  *See* 9 U.S.C. §§ 1, 2.  The federal standard for review of the arbitration award applies to Aero's challenge to the award.

> special knowledge or experience, or as part of some compromise, but they might well be less willing to pick such a location if any future court proceedings had to be held there. Flexibility to make such practical choices, then, could well be inhibited by a venue rule mandating the same inconvenient venue if someone later sought to vacate or modify an award.

*Id*. at 201. That flexibility is exemplified by the parties' contract here, where Aero agreed to arbitrate in the inconvenient forum of Texas, but expressly retained the right to seek confirmation or *vacatur* of an award in "any court having jurisdiction."

Despite this binding Supreme Court precedent and SSAC's admission that the FAA applies, SSAC argues that Texas procedure somehow trumps the FAA's venue provisions. Indeed, at the Texas hearing on February 15, SSAC argued that this Court *lacks jurisdiction* entirely because Texas procedure applies to the Texas case, and because venue under the FAA is supposedly trumped by the venue provisions under the Texas General Arbitration Act. Putting aside the fact that SSAC has now retreated from its initial no-jurisdiction argument (asserting instead that this Court should abstain from exercising its jurisdiction), the implications of SSAC's argument are far-reaching and nonsensical.[5] For example, it would undermine our system of federalism if a federal district court had to examine the nuances of every Texas venue statute to determine whether a parallel Texas state court action imposed a mandatory venue rule for that Texas action. Indeed, even in diversity cases applying substantive state law, the federal courts apply their own procedures and venue rules. *Knievel v. ESPN*, 393 F.3d 1068, 1073 (9th Cir. 2005) ("[F]ederal courts sitting in diversity must apply the Federal Rules of Civil

---

[5] Notably, SSAC has not yet notified the Texas state court that it has since retreated from the no-jurisdiction argument it asserted on February 15. In fact, SSAC has filed a supplement to its application to confirm in which such notification is conspicuously absent. (Chaiken Aff., Ex. 10.) Instead, SSAC asks the Texas court to sanction Aero, via an attorneys' fee award, for filing this Oregon proceeding. (*Id.*)

Procedures"); *Glendora v. Anderson*, 2003 WL 202108, at *1 (9th Cir. Jan 24, 2003) (applying federal venue rules in diversity action).

In fact, the two cases cited by SSAC -- *J.D. Edwards World Solutions Co. v. Estes, Inc.*, 91 S.W.3d 836, 839 (Tex. App. – Fort Worth 2002, pet. denied) and *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 260 (Tex. App. – Houston [1st Dist.] 2005, pet. denied) -- do not even address whether the Texas General Arbitration Act's venue provision trumps the FAA's venue provision, much less the separate issue of whether the Texas General Arbitration Act's venue provision would apply to a lawsuit in federal district court in Oregon. After noting that Texas procedural rules apply instead of federal rules "[w]hen Texas courts confront procedural issues involving a case subject to the FAA," the court in *J.D. Edwards* looked to Texas law in determining whether an interlocutory appeal or a mandamus action was the proper procedural vehicle for appealing the *vacatur* of an arbitration award. *J.D. Edwards*, 91 S.W.3d at 839. In *Hamm*, the court cited *J.D. Edwards* for the proposition that "Texas procedure applies even when the FAA applies substantively," but held that it need not address whether the deadline for filing a motion to vacate, modify or correct an award was a procedural or substantive issue. *Hamm*, 178 S.W.3d at 260 n.3. At most, these cases stand for the unremarkable proposition that a Texas court will apply Texas procedure, much like this Court will apply federal procedure. But they do not hold, imply, or even suggest by analogy that the proper venue for a motion to vacate, as established by the FAA and Supreme Court precedent, is trumped by the venue provisions of the Texas General Arbitration Act.

## II. SSAC Overstates the Texas Forum's Connection to Aero's Motion to Vacate.

SSAC's extensive recitation of the procedural history of the parties' dispute confuses two separate issues: the proper forum for the underlying arbitration, and the proper forum for Aero's challenge to the arbitration award. SSAC argues, without citing any supporting authority, that the pendency of litigation occurring before an arbitration award is rendered somehow forever fixes venue for post-award litigation.[6] In fact, it does not. As demonstrated below, Aero has an independent cause of action for *vacatur* of the award, which federal law and the parties' contracts expressly authorized Aero to file in this Court regardless of where SSAC moved to compel arbitration or for confirmation of the award. Thus, the only relevant comparison is between Aero's motion to vacate in this Court and SSAC's application to confirm in Texas. The volume of pre-award litigation in Texas is simply irrelevant. Under this proper comparison, there are several reasons why the action in this Court's jurisdiction should take precedence.

### A. An Action to Vacate or Confirm an Award is a New and Independent Cause Action.

Aero's motion to vacate in this Court is a new, separate cause of action -- wholly independent from the Texas state court actions that addressed only the arbitrability of Aero's claims. Indeed, section 10 of the FAA creates a separate cause of action to vacate an arbitration award. 9 U.S.C. § 10; *see also Cortez*, 529 U.S. at 200-04 (recognizing that § 10 motions begin a separate proceeding and that venue is not limited to the district of the arbitration). Even when a party initially files a lawsuit subject to arbitration in state court, that party does not waive its right to file a subsequent action to confirm (or vacate) an arbitration award in federal court.

---

[6] In essence, SSAC seeks to deprive Aero from availing itself of the flexibility to choose a post-award venue that both the parties' contracts and *Cortez* specifically accord to an out-of-state party like Aero.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 2006 WL 466652, at *1 (9th Cir. Feb. 24, 2006). The Supreme Court has also held that an order compelling arbitration and dismissing non-arbitrable claims is a final, appealable order, notwithstanding the possibility of a subsequent action to confirm or vacate, thus further underscoring that an application to confirm or vacate an award is a separate and independent action that may be brought in a different court. *See Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 86-87 (2000).

Applying these principles here, it is plain that Aero's § 10 action to vacate the arbitration award is wholly independent of any Texas action in which SSAC sought to compel arbitration, even if those actions were commenced by Aero for relief on the underlying claims. Under Supreme Court precedent and the parties' contracts, Aero had the absolute, unrestricted right to bring a separate proceeding in this Court to vacate the arbitration award, despite the existence of pending proceedings in another forum where arbitration was compelled on the underlying claims. *See Cortez*, 529 U.S. at 197-204.

The existence of, and procedural history in, the Texas actions cannot now be used to deprive Aero of its statutory and contractual right to file or to proceed with its independent application to vacate in this federal court. *See HCC Aviation Ins. Group, Inc. v. Employers Reinsurance Corp.*, 2005 WL 1630060, at *2 (N.D. Tex. June 30, 2005) (analyzing the timing of competing post-arbitration applications in federal and state court, and attributing no significance to initial state court proceeding staying case pending arbitration). Otherwise, *Cortez* (and the parties' contractual reservation of the right to proceed elsewhere) would be rendered virtually meaningless, because the right to file an independent federal action somewhere other than the district in which the arbitration was held would be effectively unavailable in every case where a

court happened to compel arbitration in prior litigation. Aero's action to vacate the arbitration award is *not* a continuation of the Texas state court action, as SSAC argues, but rather constitutes a new, independent action supported by diversity jurisdiction. *See Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332, 337-38 (4th Cir. 2002) (rejecting argument that diversity jurisdiction should be evaluated at time of underlying lawsuit, because action to vacate arbitration award was independent action that did not relate back to prior action).

### B. SSAC's "First-Filed" Argument Is Irrelevant and Erroneous.

Contrary to SSAC's assumption, the question of where a post-award action is "first filed" is not legally relevant under the present circumstances. *See American Bankers Life Assurance Co. of Florida v. Overton*, 2005 WL 943522, at *3 (5th Cir. 2005) ( "We find no indication that the 'first-to-file' rule plays a part in the circumstances that we face today – two actions pending, but one is in state court and the other is in federal court . . . [T]he 'first-to-file' rule applies only when two similar actions are pending in two federal courts"). But even if that rule were applicable, this Court was the first forum to legitimately exercise jurisdiction over the arbitration award, and thus should be considered the court where the first filing occurred.

On February 14, 2007, this Court issued an order staying confirmation of the award – thus, exercising jurisdiction over the award. At that time, no Texas state court had taken action of any kind with respect to the award.[7] Significantly, although SSAC filed in the first lawsuit an application to confirm the award on January 5, 2007, that application, as a matter of law, was a legal nullity because the first lawsuit previously had been indefinitely stayed and abated by that court's order. (Chaiken Aff., Ex. 3.) That stay order had not been previously modified or

---

[7] In fact, on February 15 -- the first time when a Texas state court could have taken action on the award -- no such action could be taken because of this Court's stay order.

vacated. Abatement precludes the trial court and the parties from going forward *in any manner* until the case is ordered reinstated. *In re Kimball Homes Tex., Inc.*, 969 S.W.2d 522, 527 (Tex. App. – Houston [14th Dist.] 1998, no pet.); *America Online, Inc. v. Williams*, 958 S.W.2d 268, 272 (Tex. App. – Houston [14th Dist.] 1997, no pet.); *Permanente Med. Ass'n v. Johnson*, 917 S.W.2d 515, 517 (Tex. App. – Waco 1996, orig. proceeding); *Lumbermens Mut. Cas. Co. v. Garza*, 777 S.W.2d 198, 199 (Tex. App. – Corpus Christi 1989, orig. proceeding). Indeed, with the exception of a notice of non-suit, all proceedings after entry of a court-ordered stay and abatement are a legal nullity. *Amrhein v. La Madeleine, Inc.*, 206 S.W.3d 173, 174-75 (Tex. App. – Dallas 2006, no pet. h.); *In re Kimball Hill Homes*, 969 S.W.2d at 527. A non-suit is the only pleading that will be given effect during the pendency of a court-ordered stay. *United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840, 846 (Tex. App. – Corpus Christi 1999, pet. denied).

At the time SSAC moved to confirm the award on January 5, the Texas case remained abated and had not been reinstated. Before filing its application for confirmation, SSAC should have filed a motion asking the Texas court to lift the stay, which is standard practice. *See, e.g., Smart v. Sunshine Potato Flakes*, L.L.C., 307 F.3d 684, 686 (8th Cir. 2002) (party filed motion to lift stay and application to confirm arbitration award); *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 705 (D.C. Cir. 2001) (same); *Manion v. Nagin*, 2003 WL 21459680, at *1 (D. Minn. June 20, 2003), *aff'd*, 392 F.3d 294 (8th Cir. 2004) (same). But SSAC did not do so, and in fact did not ask the Texas court to lift the stay until it presented an order to the Texas state

court after the February 15 hearing.[8]  For this reason alone, SSAC's application for confirmation purportedly filed on January 5, 2007 is a legal nullity, and is of no consequence in determining a first-filed question -- even assuming such a question were legally relevant.

SSAC's January 5, 2007 application for confirmation is a legal nullity for a second reason.  SSAC argues, without any legal authority, that a stay pending arbitration automatically terminates when the underlying arbitration is completed.  But even if that were true – which it is not – the arbitration did not terminate until February 8, 2007, when the arbitration panel issued an order denying SSAC's motion to modify the award.  (Chaiken Aff., Ex. 2.)  Meanwhile, Aero then non-suited the first lawsuit, in which SSAC purported to file its January 5 confirmation application.  (*Id*. at Ex. 5.)  The non-suit ended the first lawsuit, and Judge Peden's subsequent decisions in that case are legally null and void.

SSAC's February 14, 2007 application for confirmation is similarly defective.  SSAC filed this application in the second lawsuit only minutes before Aero filed its motion to vacate with this Court,[9] and it also filed a motion to transfer and consolidate the second lawsuit into the first lawsuit.  (*Id.* at Ex. 6.)  At the February 15 hearing, SSAC persuaded the Texas court to grant its motion to transfer and consolidate, resulting in the transfer and consolidation of the second lawsuit into the non-suited first lawsuit that is no longer in existence.  (*Id.* at Ex. 8.)

---

[8]  In the meantime, on February 13, 2007, Aero exercised its absolute right to non-suit the first lawsuit.  (Aff. 89-90)  Although SSAC correctly describes Texas law as providing that a non-suit cannot preclude an opposing party's claim for affirmative relief, that principle does not apply here given that SSAC's only affirmative claim was the void application to confirm -- a legal nullity, meaning it must be treated as though it never existed.  Thus, the first lawsuit was dismissed in its entirety before Judge Peden conducted a hearing in it.  *See Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982) (a nonsuit is effective as soon as it is filed or requested in open court).

[9]  SSAC filed its application to confirm on February 14, 2007 at 3:51 CST, and Aero filed its motion to vacate on February 14, 2007 at 4:29 PST.

Although the second lawsuit was not subject to a separate stay pending arbitration, the transfer and consolidation of that lawsuit into the stayed and dismissed first lawsuit rendered the second lawsuit a nullity, unless and until that error is corrected. *Cf. In re Bridges*, 28 S.W.3d 191, 195 (Tex. App. – Fort Worth 2000, no pet.) (non-suit mistakenly dismissed all claims in consolidated action, and trial court ordered to issue order correcting mistake). As a result, even if the concept of "first filing" were legally relevant, SSAC's February 14 application to confirm cannot be treated as a "first filing" over Aero's February 14 motion to vacate in this Court.

### C. The Texas Court Has Taken No Action on SSAC's Motion to Confirm.

This case is not only the first-filed case in relation to enforcement of the award, but even more importantly, it is also the only case that involves any legitimate action on a motion to confirm or vacate the award. Under a *Colorado River* abstention analysis (which is the only analysis at issue), the priority of the cases is not measured exclusively by which case was filed first, but instead employs a practical, flexible analysis of how much progress has been made in the two actions.[10] Aero's application to vacate in this Court constitutes a new and independent action, and gave rise to the stay order under 9 U.S.C. § 12 on February 14 and the telephone hearing on February 26 in which this Court confirmed that it had read Aero's motion to vacate, considered Aero's application for expedited hearing on the abstention issues, and set a briefing and hearing schedule on those issues. In contrast, the Texas court has taken no action on SSAC's application to confirm, other than to merely state, in disregard of Texas' own rules of comity, that it intends to exercise jurisdiction over SSAC's application to confirm notwithstanding the existence of, and its awareness of, this Court's stay order. The Texas court's

---

[10] Indeed, as previously noted, the first-filed analysis is irrelevant when one proceeding is pending in federal court and the other is pending in state court.

action in violation of the stay is entitled to no weight in an abstention analysis and indeed should be disregarded completely.

### D. Oregon is the Most Relevant Forum for Enforcement of the Award.

While Aero's sales activities in Oregon were an important part of the underlying arbitration dispute, Oregon will play an even more prominent role in any attempt to enforce the arbitration award. The award provides SSAC with no affirmative relief, except for recovery of a fraction of its attorneys' fees, $55,000. To enforce any judgment against Aero, SSAC will have to come to Aero's home state of Oregon. There, Aero would be able to collaterally attack any Texas judgment to the extent permitted by Oregon law.. If that were to occur, an Oregon court might have to consider many, if not all, of the issues now before this Court.

Further, despite its other legal and factual flaws, the award provides substantial relief to Aero, but that relief is conditioned upon delivery of aircraft to customers in the Pacific Northwest. (Potter Aff., Ex. 1, pp. 4-6.) A portion of that relief is also conditioned on the factual issue of whether the primary base of operations for those planes is within Aero's 7-state region in the Pacific Northwest. While SSAC emphasizes Texas' past connections to the completed arbitration and related Texas lawsuits, the now-pending and all future legal and business issues in this case directly and materially implicate Oregon.

### III. The *Colorado River* Abstention Doctrine Does Not Require, or Permit, this Court to Stay or Dismiss Aero's *Vacatur* Action.

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). Abstention from the exercise

of federal jurisdiction is considered "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River*, 424 U.S. at 813 (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188 (1959)). That is so because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817.

Unlike other forms of abstention, *Colorado River* abstention is not based on weighty considerations of federal-state relations. *Id* at 818. Instead, it is designed to promote "wise judicial administration," and a federal court should decline to hear cases under its jurisdiction only in "*exceptional* circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Id.* at 813, 817 (emphasis added). A court considering whether to abstain under *Colorado River* should "ta[ke] into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Id.* at 818; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983). The law is clear that the balance of the factors is heavily weighted against abstention. *Moses H. Cone*, 460 U.S. at 16.

The *Colorado River* abstention factors include:

- Whether either court has assumed jurisdiction over a *res*;

- The relative convenience of the forums;

- The desirability of avoiding piecemeal litigation;

- The order in which the forums obtained jurisdiction;

- Whether state or federal law controls;

- Whether the state proceeding is adequate to protect the parties' rights;

- Whether the federal court action is an attempt to forum shop; and

- Whether the federal court action is an attempt to avoid adverse rulings by a state court.

*Nakash v. Marciano*, 882 F.2d 1411, 1415-17 (9th Cir. 1989).[11]

Although SSAC cites several cases for the general proposition that federal courts often stay or dismiss applications to vacate in favor of state court proceedings, not one supports imposing the highly disfavored remedy of abstention in this case. The most off the mark is *Garber v. Sir Speedy, Inc.*, 1996 WL 734947 (N.D. Tex. Dec. 11, 1996). There the court did interpret the FAA's venue provisions as mandatory, holding that "jurisdiction to confirm or vacate an arbitration award lies exclusively with the district court for the district wherein the award was made." *Id.* at *6 (citation omitted). But that was before the United States Supreme Court's 2000 decision in *Cortez*, which expressly held that the FAA's venue provisions are permissive. *See Cortez*, 529 U.S. at 204. In fact, the Court went out of its way to explain that the thrust of a prior line of cases holding other special venue statutes to be restrictive "is not that [all] special venue statutes are deemed to be restrictive; [the cases] simply show that analysis of special venue provisions must be specific to the statute." *Id.* And with that, the Supreme Court rendered *Garber*'s holding obsolete.

SSAC's remaining citations are equally unhelpful. SSAC cites two cases where a federal court abstained in favor of a state court, but in each one the state court had already confirmed the arbitration award. *See Vulcan Chemical*, 297 F.3d at 341 ("Vulcan's request for a federal court to vacate an arbitration award that a California state court had confirmed in an earlier judgment after considering the same evidence and arguments presents such extraordinary circumstances

---

[11] The *Colorado River* factors are to be applied in a pragmatic and flexible way as part of a balancing process rather than as a "mechanical checklist." *Moses H. Cone*, 460 U.S. at 16.

[for *Colorado River* abstention]"); *Phillip Diniaco & Sons, Inc. v. Max J. Colvin & Sons Trucking, Inc.*, 1988 WL 137336, at *1 (6th Cir. Dec. 23, 1988) ("On July 7, 1987, the common pleas court granted Colvin's motion to confirm the award, entering a money judgment for Colvin."). In another case SSAC cites, the motion for abstention was unopposed. *Hinman v. Fujitsui Software Corp.*, 2006 WL 358073, at *2 n.3 (N.D. Cal. Feb. 13, 2006) ("Petitioner does not oppose or even address Respondent's primary argument that the Court should dismiss or stay under *Colorado River* in its papers."). Thus, in each of the arguably applicable cases cited, there were plainly extraordinary circumstances justifying abstention by the federal courts. No such circumstances are present here.[12]

In contrast, Aero offers precedent that squares with the facts before this Court. *In the Matter of the Arbitration Between IFC Interconsult, AG and Safeguard Int'l Partners, LLC*, 334 F. Supp. 2d 777 (E.D. Pa. 2004), *aff'd in part*, *rev'd in part on other grounds*, 438 F.3d 298 (3d Cir. 2006) (affirming district court's decision not to abstain) is one such case. Just as in this case, the parties had agreed to an AAA arbitration in a particular forum but their agreement did not identify any particular court for enforcement of an award. *Id.* at 778, 781. And, just as here, a state court had already issued an order interpreting the agreement and compelling the named parties to arbitration. *Id.* at 778. In June 2004, the arbitration panel rendered an award, and one party filed a motion to confirm the award in federal court in Pennsylvania. *Id.* at 778-79.

---

[12] SSAC also cites the unpublished opinions in *NitGen Co. v. SecuGen Corp.*, 2004 WL 2303929 (N.D. Cal. Oct. 12, 2004) and *Myer v. Americo Life, Inc.*, 2005 WL 3007117 (W.D. Mo. Nov. 8, 2005). These cases are notable for the courts' complete failure to cite the Supreme Court's decision in *Cortez*, much less follow its directive that a motion to confirm or vacate is a new and independent cause of action. Indeed, both cases rely heavily on the state court's prior involvement on the arbitrability issue -- which should have no bearing on the separate question of where an enforcement action should proceed. *See NitGen*, 2004 WL at *5-6; *Myer*, 2005 WL 3007117, at *1-2..

Approximately one month later, the other party filed an application to vacate in the same state court that had compelled arbitration. *Id.* at 779. The state court had administratively closed the original case, and a formal motion was required to reopen the case. *Id.* at 780. Much like SSAC here, the party that initiated the state court action filed only an application to vacate, and did not file a separate motion to reinstate the case. *Id.* After noting the uncertainty about whether the case was properly reopened, the court held that "[e]ven if the reopened [state court] case is deemed 'concurrent,' it concerned a declaratory judgment concerning which parties could participate in the arbitration pursuant to the terms of the agreement." *Id.* Thus, even though a motion to vacate had been filed in state court, the federal court recognized that an action to compel arbitration has no bearing on a subsequent application to confirm or vacate an award. *Id.* (state court action "is not parallel" to federal court action, "which concerns whether the arbitration award should be confirmed"). As a result, the court found that "any risk of fractured proceedings is outweighed by the importance of the federal court properly exercising its jurisdiction." *Id.* at 780; *see also HCC Aviation Ins. Group,* 2005 WL 1630060, at \*2 (declining to abstain in favor of West Virginia state court where motion to vacate arbitration award had been filed and state court had previously stayed proceeding pending arbitration); *Republic Ins. Co. v. Maleski*, 1994 WL 548233, at \*4-6 (N.D. Ill. Oct. 5, 1994) (no *Colorado River* abstention when competing motion to vacate was filed in Pennsylvania State Court that had compelled arbitration and stayed case pending arbitration); *Johnston Lemon & Co. v. Smith*, 882 F. Supp. 4 (D.D.C. 1995) (no *Colorado River* abstention when motion to vacate was filed in federal court within minutes of motion to confirm being filed in state court).

Properly applied, the *Colorado River* abstention factors weigh heavily against abstention and in favor of this Court properly exercising its jurisdiction over Aero's motion to vacate the arbitration award:

### 1.	This Court first assumed jurisdiction over the arbitration award.

An arbitration award and a court's exercise of jurisdiction over the decision of an arbitrator are sufficiently singular in nature to satisfy the *res* analysis for purposes of determining abstention under *Colorado River*. *See Vulcan Chem.*, 297 F.3d at 341. Nevertheless, because the first-to-file rule does not apply to competing state and federal cases, *American Bankers Life Assurance*, 2005 WL 943522, at *3, this factor is entitled to little weight. In any event, as discussed above in section II(B), this Court was the first to exercise jurisdiction over the award via Aero's new and independent cause of action for *vacatur* of the arbitration award. *See HCC Aviation Ins. Group*, 2005 WL 1630060, at *3 (focusing exclusively on post-arbitration case activity). In granting affirmative relief in the form of a stay of confirmation as authorized by 9 U.S.C. § 12, this Court did so before the Texas court took any action on a post-award basis.

Accordingly, this Court is the first to legitimately assume jurisdiction over the award, which weighs against its abstention now.

### 2.	This Court is a more convenient forum for enforcement proceedings.

Try as it may, SSAC cannot obscure the fact that Oregon is a more convenient forum for any enforcement of the award. The award provides Aero with the potential for a significant monetary recovery from the delivery of aircraft, depending on whether the aircraft are (1) delivered to customers who are located within Aero's territory, a 7-state region that includes Oregon; and (2) used primarily by those customers in the same 7-state area. (Potter Aff., Ex. 1,

pp. 4-6.) And if SSAC wants to enforce its $55,000 attorneys' fee award, it will have to come to

Aero's home state of Oregon to do so. Given that all roads relating to enforcement lead to

Oregon, it would be more convenient for both parties to have all post-award proceedings in this

Court.

Relying on the underlying arbitration and the related lawsuits, SSAC nonetheless argues

that "there is no reason why it would be convenient to move the case from Texas to Oregon."

(Defendant Sino Swearingen Aircraft Corporation's Memorandum in Support of Motion to

Vacate *Ex Parte* Order and Stay Proceedings ("SSAC Memo"), p. 15.) This argument evidences

SSAC's fundamental misconception that there is a Texas case that needs to be moved. In fact,

Aero's application to vacate is a new action, and the Texas arbitration is now over. The new

action for *vacatur* of the award will be determined based on the transcript of the arbitration

proceedings, including testimony and exhibits, and the grounds for vacatur under the FAA. This

Court is well-versed in FAA law, and it can conveniently review the written record, thus

defeating SSAC's primary argument that Texas is a more convenient forum. *See Republic Ins.*,

1994 WL 548233, at *4-5 ("[G]iven the limited sorts of issues that can be raised on a petition to

confirm an arbitration award, this [convenience] factor does not weigh very heavily in the

balance.").

SSAC's remaining arguments are similarly unavailing. SSAC suggests that Aero

somehow waived its right to file this action by "voluntarily" choosing the Texas state court

forum initially. In fact, the filing of a state court lawsuit subject to arbitration does not waive a

party's right to file a subsequent action to confirm (or vacate) an arbitration award in any federal

court where jurisdiction is proper. *Merrill Lynch, Pierce, Fenner & Smith*, 2006 WL 466652;

*Cortez*, 529 U.S. at 201. Moreover, SSAC contends that the proceeding in this Court would be inconvenient for Texas-based counsel, but the Court's ability to convene telephone hearings demonstrates how easily that issue can be addressed. If anything, proceeding in Bexar County is less convenient because the courts there require the parties' Dallas counsel to appear in person at all hearings.

**3.    This Court's exercise of jurisdiction will not result in any "undesirable" piecemeal litigation.**

Federal courts generally have no obligation to abstain in favor of a parallel state court proceeding. *U.S. Life Ins. Co. v. Ins. Commissioner of California*, 2005 WL 3150272, at *1 (9th Cir. 2005) (noting this general rule would apply "[e]ven if U.S. Life had challenged the arbitration award in parallel state court proceedings."). Thus, "as a general rule, . . . our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." *Vulcan*, 297 F.3d at 340. There is no reason to deviate from that general rule in this case, particularly given the existence of at least two factors mitigating against the risk of inconsistent rulings.

First, it is not at all clear that a "parallel" Texas state court action even exists. SSAC filed its first motion to confirm in the first lawsuit, which was stayed pending arbitration that was still ongoing when the motion was filed. Because the arbitration was still pending and SSAC never moved to lift the stay, SSAC's first application to confirm was a legal nullity. *See Amrhein, 206 S.W.3d at 174-75; In re Kimball Homes*, 969 S.W.2d at 527. Aero subsequently filed a non-suit of the first lawsuit, which terminated it. *See United Oil & Minerals*, 1 S.W.3d at 846. Although SSAC later filed a second motion to confirm in the second lawsuit, SSAC persuaded the Texas court to transfer and consolidate the second lawsuit into the dismissed first

lawsuit.  (Chaiken Aff., Ex. 6.)  The procedural posture of the Texas cases is thus analogous to *In re Arbitration Between IFC Interconsult, AG and Safeguard Int'l Partners, LLC*, where the court declined to abstain in favor of a state court case that may not have been properly reopened, even though the court would have declined to abstain in any event.  334 F. Supp. 2d at 780.

Second, this Court's existing stay order greatly mitigates any risk of inconsistent rulings and piecemeal litigation.  Aero has not requested the state court to vacate the arbitration award, but instead only incorporated by reference its motion filed in this Court to make the Texas court aware that it has valid substantive objections, beyond the procedural ones discussed here, which preclude confirmation.  As a result, the Texas proceeding is not a mirror image of this case. More importantly, this Court's stay should prevent the Texas court from acting on SSAC's motion to confirm.  While SSAC and the Texas court threaten to proceed with confirmation of the award, their doing so in violation of comity cannot be used to manufacture an inconsistency that would justify abstention.  In fact, that very threat underscores the need for this Court to preserve, protect, and exercise its existing jurisdiction by assuring both parties a full, fair, and final hearing on Aero's motion to vacate -- a motion that takes priority over a motion to confirm in any event.  *See* 9 U.S.C. §§ 9, 12.

Notably, SSAC has now appeared before this Court, which may hold it accountable for any violation of this Court's stay order.  The minimal threat of piecemeal litigation and inconsistent rulings therefore weighs in favor of this Court retaining the jurisdiction it plainly has over Aero's motion to vacate.  *Cf. Republic Ins. Co.*, 1994 WL 548233, at *5 (the more limited issues for confirmation of an award, as opposed to issues in the underlying dispute, mean "this factor does not weigh very heavily in the balance.").

**4.     This Court has engaged in the only valid activity regarding enforcement of the Award.**

Because the first-to-file rule does not apply in a case involving a federal district court and a state court, *see American Bankers Life Assurance*, 2005 WL 943522, at *3, the Court must weigh the relevant activity that has occurred in each forum. *Moses H. Cone*, 460 U.S. at 21 (key question is "how much progress has been made in the two actions?").  This analysis weighs heavily in favor of this Court, which has already preserved the *status quo* through affirmative relief, read Aero's motion to vacate, held a telephone hearing, and issued orders establishing a briefing schedule to resolve the issue of whether it can and will proceed to decide the *vacatur* or confirmation of the award.  On the other hand, despite SSAC's claims that the Texas court supposedly has made "substantial progress," that so-called progress relates exclusively to the earlier and distinct issue of arbitrability, and not at all to the enforcement of the award.  Given that Aero's motion to confirm is a new and independent claim, the only relevant issue is what the Texas court has done on SSAC's motion to confirm the award – itself a new and independent claim.  The answer is nothing, except for holding a single hearing in which the Texas court merely announced its intention to disregard this Court's pre-existing stay order and to proceed with a confirmation hearing in the future.  This Court's valid activity deserves far more weight than the Texas court's invalid, proposed future activity.  This factor therefore weighs against abstention.

**5.     The applicability of the FAA offsets the Texas choice of law clauses.**

The choice of law factor requires the Court to balance the applicability of the FAA to the enforcement of the award, as compared to the applicability of Texas law to the underlying claims.  "If the state and federal courts have concurrent jurisdiction over a claim, this factor

becomes *less* significant." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (emphasis added). The Texas state court has concurrent jurisdiction to apply the FAA, *Vulcan*, 297 F.3d at 343, and this Court has concurrent jurisdiction to interpret Texas law in this diversity action. *See Merritt-Chapman & Scott Corp. v. Frazier*, 289 F.2d 849, 853-54 (9th Cir. 1961). Based on the existence of concurrent jurisdiction, the choice of law factor therefore deserves less weight than the other *Colorado River* factors.

In any event, the applicability of the FAA to this case weighs in favor of the Court retaining jurisdiction. "Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender [of jurisdiction], . . . the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26. SSAC cites several cases for the proposition that the applicability of the FAA does not *strongly* favor federal jurisdiction, because state courts often apply the FAA in actions to enforce arbitration awards. *Vulcan*, 297 F.3d at 343; *NitGen*, 2004 WL 2303929 at *6 n.4. But these cases merely recognize the general principle that the choice of law factor is less significant when the federal court and state court have concurrent jurisdiction.

If anything, the same reasoning applies to the applicability of Texas law to the underlying claims, given that federal courts routinely apply state law in diversity cases. *Merritt-Chapman*, 289 F.2d at 854 (absent constitutional problems or compelling policy considerations, existence of state law issues not ground to abstain). While two of the parties' three agreements contain a general Texas choice of law provision, the parties never agreed to a specific judicial forum for litigation about the propriety of the award, and the general choice of law provision does not trump the applicability of the FAA to questions concerning confirmation or *vacatur*. *See*

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (parties must express clear intent to opt out of FAA). Moreover, SSAC's suggestion that the Texas state court has some special knowledge about this case is simply wrong. No Texas court has ever addressed the merits of the underlying claims, and Judge Peden himself had no prior involvement in this case before the February 15 hearing.

Finally, at this stage of the litigation, the predominant law to be applied is federal law prescribing the scope of review of an arbitration award and the grounds for vacating it. Thus, the Court need not apply Texas law *de novo*; it need only determine, under federal standards of review, whether the arbitrators properly applied or manifestly disregarded Texas law. For this reason as well, the applicability of the FAA weighs against abstention.

> **6.    The Texas state court proceedings may not be adequate to protect Aero's rights.**

Aero has no complaints generally about the adequacy of Texas state courts, but the Texas court's February 15, 2007 announcement regarding its jurisdiction to proceed in the face of a federal court stay suggests that Judge Peden may not be willing to adequately protect Aero's rights under the FAA. For any state court to properly apply FAA standards to enforcement of an arbitration award, it must have a basic level of respect for federal law. But here, Judge Peden has demonstrated a disregard for federal law and the doctrine of comity by deciding to proceed with a confirmation hearing after receiving notice of this Court's stay order under 9 U.S.C. § 12.[13] Even more disconcerting was Judge Peden's ultimate conclusion that he had jurisdiction

---

[13] Under the United States Constitution and Texas law, a state court is required to respect the orders of another tribunal. *See* U.S. Const. art. IV, § 1 (requiring states to recognize and enforce the judicial acts and decisions of other states); *see also Gannon v. Payne,* 706 S.W.2d 304, 306

to proceed immediately with the merits of SSAC's application for confirmation despite knowing that, stay or no stay, Aero has separately moved for *vacatur*. (Chaiken Aff., Ex. 9, pp. 51 and 53.) His desire to move so hastily is particularly troublesome given that, as this Court has noted, there is nothing about the arbitrators' award that requires an immediate confirmation (such as a risk of dissipation of recoverable assets or a loss of perishable property). Under these circumstances -- indeed, under any circumstances -- the confirmation process must yield to a fair, fully vetted *vacatur* hearing. *See* 9 U.S.C. §§ 9, 12. SSAC's motion to confirm cannot be used to transform Aero's motion to vacate, which the law recognizes as a new and independent proceeding, into a mere objection to confirmation.

Moreover, Judge Peden's intent to proceed appears to have been heavily influenced by SSAC's argument that the procedures in the Texas Arbitration Act somehow preempt the FAA, which raises further concerns about the Texas court's willingness or ability to apply a faithful interpretation of the FAA's standards for confirmation of an award. The only reason that Judge Peden did not proceed with confirmation of the Award on February 15 was the decision by SSAC's counsel to propose a short delay, apparently recognizing the impropriety of addressing the merits in the face of a federal court stay. (Chaiken Aff., Ex. 9, p. 52.) And notwithstanding the Texas court's rotating docket system, Judge Peden has stated that he will personally decide SSAC's application to confirm. (*Id*. at pp. 53-54.)

The Texas court's approach thus raises substantial questions about the adequacy of the Texas forum. Those questions require that abstention be denied.

---

(Tex. 1986) (recognizing comity is principle of mutual convenience whereby one state or jurisdiction will give effect to laws and judicial acts/decisions of another).

7.     **Aero's federal court action is not an attempt to forum shop; if anyone is forum shopping, it is SSAC.**

SSAC is in no position to accuse Aero of "forum shopping." SSAC's unclean hands are exemplified by the February 15, 2007 hearing, at which SSAC encouraged the Texas court to proceed with a hearing in direct violation of this Court's stay order, based on a claim of no-federal-jurisdiction from which it has since retreated. SSAC further questioned whether this Court's stay order meant anything, argued that this Court had no jurisdiction based on inapplicable Texas venue rules, and spoke disparagingly about "Left Coast law."[14] (*Id.* at pp. 8 and 38.) Indeed, in an effort to prevent Aero from seeking relief in this Court, SSAC even suggested that the Texas court had authority to issue a stay of this Court's proceedings. (*Id.* at p. 10.) Moreover, SSAC prematurely filed its motion to confirm in the first lawsuit, even though the stay remained in effect and SSAC simultaneously was seeking an order from the arbitration panel modifying its award. And now, SSAC even asks the Texas court to order Aero to pay SSAC's attorneys' fees because Aero exercised its legal and contractual right to file this case. (*Id.* at Ex. 10, p. 4.)

SSAC's actions and comments show beyond doubt that SSAC desires to avoid the Oregon federal district court because of preconceived and erroneous notions about the so-called "Left Coast" law, and that SSAC will do or say almost anything to avoid jurisdiction in this Court so that it can hastily proceed with confirmation. Indeed, SSAC seeks not only to

---

[14]   Before this Court, SSAC has backed off this position by conceding the existence of jurisdiction, arguing that Texas venue rules control only as a supposed factor supporting discretionary abstention. (*See* SSAC Memo at p. 11, n.11) The "no jurisdiction" argument that SSAC successfully argued to the Texas court is nowhere to be found in its briefing here, and SSAC has not informed Judge Peden that its position has evolved from "no jurisdiction" to a request for the very rare *Colorado River* type of abstention.

effectively rewrite the parties' arbitration clause, which did not mandate Texas as the exclusive venue for post-award proceedings, by forcing Aero to litigate such proceedings in Texas -- it now seeks to have Aero punished in Texas for exercising its lawful and contractual right to proceed in this Court.

In accusing Aero of forum shopping, SSAC also encourages this Court to speculate about Aero's motives, and ignores the critical difference between a motion to compel arbitration and an independent action for *vacatur* of an arbitration award (and the federal policy that declares the latter as taking priority over a confirmation motion). By filing its motion to vacate in this Court, Aero is doing nothing more than what the parties' agreements permitted -- that is, exercising its right in an action governed by the FAA to file an action to enforce the award in any federal court with jurisdiction. *Cf. Bank One, N.A. v. Boyd*, 288 F.3d 181, 186 (5th Cir. 2002) (finding nothing vexatious about party filing federal lawsuit to compel arbitration under FAA when parties had "a right granted by Congress to have the court decide the issues they presented") (internal quotation marks and citation omitted).

Moreover, this Court is the logical place for an enforcement action. Aero resides in Oregon, and any attempt by SSAC to enforce the award of $55,000 in attorneys' fees will ultimately require an action in Oregon. In addition, the award provides relief to Aero that is conditioned upon delivery of aircraft to customers in the Pacific Northwest, including additional relief that is further conditioned on the factual issue of whether the primary base of operations for those aircraft is within Aero's 7-state region in the Pacific Northwest. (Potter Aff., Ex. 1, p. 5.) Oregon's connections to an enforcement action stand in stark contrast to the *NitGen* case, on which SSAC relies, because there the party found to be forum shopping apparently articulated

no reason for preferring a California federal court over a California state court. *See NitGen*, 2004 WL 2303929, at *6. Because the Oregon federal district court is the most logical place for an enforcement action to occur, SSAC's conjecture about alleged forum shopping by Aero should be rejected.

>8. **Aero's federal court action was not filed in an attempt to avoid adverse rulings by a state court.**

Aero did not file its motion to vacate in this Court in order to avoid any adverse ruling by a Texas state court. As SSAC acknowledges, Aero's motion to vacate primarily urges that, under FAA standards, the arbitration panel (not a court) manifestly disregarded the law on several material issues. The merits of the award have never been addressed by any Texas court, and thus there are no adverse state court rulings for Aero to avoid. *See Paul Revere Variable Annuity Ins. Co. v. Thomas*, 66 F. Supp. 2d 217, 222 (D. Mass. 1999), *aff'd*, 226 F.3d 15 (1st Cir. 2000) (noting that the paradigm example of forum shopping in reaction to an adverse ruling involves situations like "where a plaintiff filed a motion for preliminary injunction in federal court after losing the identical motion in state court"). Moreover, at the time Aero filed its motion to vacate, it had no idea which Texas state court judge would be assigned to hear SSAC's motion to confirm under that court's rotating docket system. Finally, if Aero had been motivated to avoid any prior adverse rulings, it already had the inherent ability to "shop" for another judge by simply filing a motion to vacate in one or both of the Texas cases, and its motion would have been randomly assigned under the Bexar County Local Rules.[15] Thus, Aero had no motive to

---

[15] Judge Peden's unfamiliarity with the substance of the underlying case is another key distinction between this case and the *NitGen* case relied on by SSAC. *See NitGen*, 2004 WL 2303929, at *6 ("Unlike the state court, this Court does not have any other history with the merits of the underlying action").

file this action to avoid any adverse state court ruling (if there had been one to avoid), and

SSAC's speculative and unfounded allegations should be rejected.

## IV. This Court's Stay Order Should Remain in Place Because It Was Authorized by 9 U.S.C. § 12.

The FAA expressly authorizes the *ex parte* stay issued by this Court on February 14:

> For purposes of the motion [to vacate, modify, or correct an arbitration award] any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

9 U.S.C. § 12. The statute thus empowers a court to stay any proceeding of an adverse party to

enforce an arbitration award, if, under a hypothetical scenario where a separate enforcement

action were brought before the same tribunal, that court "might" have made an order to stay that

proceeding. Because this Court therefore has the authority to stay a separate action for

enforcement if it had been brought in this district, it necessarily has authority under 9 U.S.C.

§ 12 to stay an enforcement proceeding in any other court, including a Texas state court.[16]

Despite this unambiguous language, SSAC argues that "the clear purpose of this

provision is to ensure that the court that first addresses the issue of arbitrability of the parties'

dispute will be the same court to later address arguments on the merits of an application to

confirm the arbitration award." (SSAC Memo at p. 10) (emphasis added). This interpretation

fails because it mistakenly imports the concept of "arbitrability" into section 12, even though the

---

[16] SSAC incorrectly argues that Aero failed to satisfy LR 7.1, assuming it applies to Aero's motion for stay. Aero fully complied. *See* Affidavit of Kenneth B. Chaiken. SSAC also incorrectly assumes that Aero's stay motion was actually argued by Aero to Judge King, when it was not argued at all. Judge King decided the motion privately on the papers. Finally, SSAC's suggestion during the recent telephone hearing that Aero's stay motion is akin to a request for temporary restraining order is a peculiar view, given that LR 7.1 specifically excepts TROs from the certification requirement. L.R. 7.1(a)(1).

context relates solely to motions to vacate and competing motions to enforce an arbitration award.  Moreover, in the very next sentence SSAC acknowledges that this Court's authority to issue a stay depends on "*if* it was also the court previously *authorized* to stay the proceedings," and not on whether the Court actually addressed the issue of arbitrability.  (*Id.*) (emphasis added)  Given that multiple courts might have been authorized to compel arbitration if an action had been brought in that court, it is readily apparent that the power to issue a stay of an enforcement proceeding is not limited to the court that actually compelled arbitration.  Rather, the power lies in the hands of the Court that has before it a motion to vacate.  The Court therefore should reject SSAC's strained interpretation of 9 U.S.C. § 12.

In the final analysis, section 12 reflects the policy that a motion to vacate takes priority over a motion to confirm, and that the former should be fully and finally resolved before the latter is considered.  *See* 9 U.S.C. § 9 (order confirming award must be granted "unless the award is vacated, modified, or corrected").  A stay is necessary to ensure this orderly process and to avoid the race-to-judgment and piecemeal litigation that SSAC is attempting to promote.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

For all of these reasons, SSAC's motion to vacate stay and to stay the proceedings in this

Court should be denied.

Respectfully submitted,


_____/s/ Nancie K. Potter_____
Nancie K. Potter, OSB No. 80152
E-mail: pottn@fosterpdx.com
FOSTER PEPPER LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204-3171
Telephone: (503) 221-7750
Facsimile: (503) 221-1510

Kenneth B. Chaiken, Texas State Bar No. 04057800
E-mail: KChaiken@chaikenlaw.com
Chaiken & Chaiken, P.C.
13355 Noel Road, Suite 600
One Galleria Tower
Dallas, TX 75240
Telephone: (214) 265-0250
Facsimile: (214) 265-1537

Jeffrey S. Levinger, Texas State Bar No. 12258300
E-mail: jlevinger@ccsb.com
Christopher J. Akin, Texas State Bar No. 00793237
E-mail: cakin@ccsb.com
Carrington Coleman Sloman & Blumenthal, LLP
901 Main Street, Suite 5500
Dallas, TX 75202
Telephone: (214) 855-3000
Facsimile: (214) 855-1333

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that I served by electronic mail the foregoing:

1.      PLAINTIFF AERO AIR L.L.C.'S RESPONSE TO DEFENDANT'S MOTION
        TO VACATE EX PARTE ORDER AND STAY PROCEEDINGS

with the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

| | |
|---|---|
| John Dunbar, Esq. | Randall R. Kucera, Esq. |
| Ball Janik, LLP | Akin Gump Strauss Hauer & Feld LLP |
| 101 W Main, Suite 1100 | 1700 Pacific Ave., Suite 4100 |
| Portland, OR 97204 | Dallas, TX 75201 |
| Telephone:  (503) 228-2525 | Telephone:  (214) 969-2800 |
| Facsimile:  (503) 226-3910 | Facsimile:  (214) 969-4343 |

Attorneys for Defendant

DATED this 5th day of March, 2007.

FOSTER PEPPER LLP


By:_____/s/ Nancie K. Potter_____
    Nancie K. Potter, OSB No. 80152
    E-mail: pottn@fosterpdx.com
    Telephone: (503) 221-7750
    Facsimile: (503) 221-1510

Kenneth B. Chaiken, Texas State Bar No. 4057800
CHAIKEN & CHAIKEN, P.C.
Telephone:   (214) 265-0250
Facsimile:    (214) 265-1537
Admitted *Pro Hac Vice*

Jeffrey S. Levinger, Texas State Bar No. 12258300
CARRINGTON, COLEMAN, SLOMAN &
BLUMENTHAL, L.L.P.
Telephone:  (214) 855-3036
Facsimile:  (214) 758-3736
Admitted *Pro Hac Vice*

Attorneys for Plaintiff