IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AERO AIR, L.L.C., an Oregon limited
Liability company,

               Plaintiff,

v.

SINO SWEARINGEN AIRCRAFT
CORPORATION, a Delaware corporation,

               Defendant.

CV-07-283-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

## INTRODUCTION

This case arises out of an arbitration award issued by an American Arbitration Association ("AAA") panel in Texas on December 21, 2006. On February 14, 2007, plaintiff, Aero Air, LLC ("Aero"), filed a Motion to Vacate Arbitration Award (docket #1) and an Ex Parte Motion to Stay Confirmation of Arbitration Award (docket #3). That same day, Judge Garr King entered an Order granting Aero's Motion to Stay Confirmation of Arbitration Award (docket #5).

1 - OPINION AND ORDER

On February 22, 2007, defendant Sino Swearingen Aircraft Corporation ("SSAC") filed a Motion to Vacate Ex Parte Order and Stay Proceedings (docket #10) pending resolution of proceedings in Texas state court. All parties consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). At a telephone status conference on February 26, 2007, this court set a hearing on March 9, 2007, to decide only that portion of SSAC's motion seeking to vacate this court's order of stay. For the following reasons, SSAC's Motion to Vacate Ex Parte Order and Stay Proceedings (docket #10) is granted.

## PROCEDURAL AND FACTUAL BACKGROUND

Aero was a member of SSAC's aircraft distributor network for over 12 years, during which time it fully performed all of its contractual obligations. That included generating 10 very profitable sales orders that would have yielded substantial commissions to Aero once SSAC produced the ordered aircraft. In February 2003, before fulfilling those obligations and allegedly to avoid its obligations to Aero and its fellow distributors, SSAC unilaterally terminated, or "cancelled," all of its distributor agreements and the orders those distributors had produced.

The underlying case between Aero and SSAC involved three separate contracts: an Aircraft Purchase Agreement, a Distributor Agreement, and an Authorized Service Center Agreement. Only the Distributor Agreement and the Service Center Agreement contained an express arbitration clause. Affidavit of Nancie K. Potter in Support of Plaintiff's Motion to Vacate Arbitration Award ("Potter Aff."), Ex. 4, pp. 7-8, and Ex. 5, p. 10. That arbitration clause requires an AAA arbitration in San Antonio, Texas, of "any claim or controversy arising out of [the] Agreement or the breach, termination, or validity thereof," with "Agreement"

defined only as the specific contracts that contained the arbitration clause. *Id.* While the parties agreed on a venue for arbitration proceedings, they expressly agreed that "[a] judgment for enforcement of the award may be entered in *any* court having jurisdiction." *Id* (emphasis added).

After termination of the distributor agreements, SSAC was sued by a group of distributors in Dallas, Texas. Aero was not a member of that group. SSAC commenced an arbitration against Aero seeking the adjudication of claims relating to all three of its agreements with Aero. Affidavit of Randall R. Kucera in Support of Defendant's Motion to Vacate and to Stay ("Kucera Aff."), Ex. 16.

On May 2, 2006, Aero filed its first lawsuit against SSAC in the 57th District Court of Bexar County, Texas, alleging claims for breach of express and implied obligations under the Aircraft Purchase Agreement, as well as for fraudulent and negligent misrepresentations that induced it to enter into that agreement. *Id* at Ex. 1. SSAC filed a motion to compel arbitration, which Aero contested. *Id* at Exs. 2, 3 & 4. Aero relied in part upon an opinion by the Dallas Court of Appeals rejecting SSAC's arguments that the arbitration clause in the Distributor Agreement encompassed claims under the Aircraft Purchase Agreement which had no arbitration clause. *In re Sino Swearingen Aircraft Corp.*, No. 05-03-01618-CV, 2004 WL 1193960 (Tex App – Dallas, June 1, 2004). The Bexar County district court nonetheless compelled arbitration of the Aircraft Purchase Agreement claims and stayed the lawsuit pending arbitration. Kucera Aff., Ex. 5. On September 28, 2006, the San Antonio Court of Appeals later denied Aero's petition for writ of mandamus without explanation. *Id* at Exs. 9, 11-12.

On August 29, 2006, Aero filed a second lawsuit against SSAC in the 285th District Court of Bexar County, Texas, alleging claims relating to the possible formation of a new and

3 - OPINION AND ORDER

independent contract in July 2006 to reinstate the unilaterally terminated contracts. *Id* at Ex. 13. Aero filed a motion in the San Antonio Court of Appeals to stay arbitration of the issues presented in the second lawsuit. *Id* at Ex. 10. The San Antonio Court of Appeals also denied that motion without explanation. *Id* at Exs. 11-12.

Aero also filed two unsuccessful motions in the arbitration proceedings to stay the arbitration based on the reinstatement dispute. *Id* at ¶¶ 18-19, Ex. 17. The arbitration commenced on October 9, 2006. On December 21, 2006, the AAA panel issued a Final Arbitration Award affirming the 2003 cancellation by SSAC of its distributorship agreements with Aero, reinstating the Authorized Distributor Agreement and Authorized Service Center Agreement, but not the Aircraft Purchase Agreement, and awarding SSAC $55,000 in attorneys' fees incurred in the two state court actions. *Id* at Ex. 18. The award also provided relief to Aero relating to two of SSAC's scheduled aircraft sales and possibly as to other sales. *Id*. Despite the partial relief awarded, Aero contends that the arbitration manifestly disregarded the law and facts in denying it the full extent of the relief sought.

On January 5, 2007, SSAC filed an application in the first Texas lawsuit to confirm the arbitration award, but did not also move to lift the stay order. Affidavit of Kenneth L. Chaiken in Support of Plaintiff Aero Air L.L.C.'s Response to Defendant's Motion to Vacate Ex Parte Order and Stay Proceedings ("Chaiken Aff."), Ex. 4. On January 10, 2007, SSAC filed a motion in the arbitration proceeding to modify the arbitration award. *Id* at Ex. 1. SSAC also filed a motion on January 31, 2007, in the second Texas lawsuit to transfer and consolidate with the first lawsuit. *Id* at Ex. 7.

On February 8, 2007, the arbitration panel issued an order denying SSAC's motion to modify. *Id* at Ex. 2.

On February 13, 2007, Aero filed a non-suit of the first Texas lawsuit. *Id* at Ex. 5.

On February 14, 2007, SSAC filed another application for confirmation of the arbitration award in the second Texas lawsuit (*id* at Ex. 6), although it previously had filed a motion to transfer and consolidate that second lawsuit into the first lawsuit.

About three hours later on February 14, 2007, Aero filed a Motion to Vacate Arbitration Award in this court (docket #1) and an ex parte motion to stay confirmation of the award pursuant to 9 USC § 12, expressly citing an upcoming hearing in the first Texas lawsuit scheduled the next day (docket #3). Without a hearing, this court granted the motion to stay that same day (docket #5).

Despite being notified of this court's stay on February 15, 2007, SSAC proceeded with a hearing on its application to confirm and its motion to transfer and consolidate. *Id* at Ex. 9, pp. 3-4. Under the Bexar County Local Rules, the 13 district court judges rotate monthly as Presiding Judge. *Id* at Ex. 11, p. 1. Each week, three other judges are assigned to assist the Presiding Judge. *Id.* For motion practice, all parties appear before the Presiding Judge, who either hears the motion or assigns the motion to one of the other assisting judges. *Id.*

SSAC's motions were randomly assigned to Judge Michael P. Peden who had no previous involvement in either the first or second Texas lawsuit. At the February 15 hearing, after Aero made Judge Peden aware of this court's stay order, SSAC emphatically argued that "[t]here is no jurisdiction up in Oregon," asserting that Texas venue rules supposedly mandate that a challenge to the arbitration award be filed in Texas state court in San Antonio. *Id* at Ex. 9,

5 - OPINION AND ORDER

pp. 9-10. SSAC portrayed the proceeding in this Court as an attempt to "go to the Ninth Circuit and get some Left Coast law" (*id* at 11, 38) and described this Court's stay order as "not clear from the face of [this court's] order that [Aero] procured anything" and also was procured "under false pretenses (*Id* at 8).

Despite this Court's stay, Judge Peden concluded that he had jurisdiction and since SSAC's counsel was "prepared to . . . proceed on the merits," would "hear the application to confirm." *Id* at 51, 53. Because Aero was not prepared to proceed, SSAC's counsel proposed a two week continuance of the hearing. *Id* at 52-54. On February 26, 2007, Judge Peden entered an Order exercising jurisdiction over SSAC's motion to confirm and declaring that the stay "is of no further force and effect since the arbitration has been concluded." *Id* at Ex. 8, p. 2. Pursuant to the parties' agreement, that hearing has been rescheduled from March 1 to March 19, 2007.

## DISCUSSION

### I.  Subject Matter Jurisdiction and Venue

This court has subject matter jurisdiction over Aero's application to vacate the arbitration award. The Federal Arbitration Act ("FAA") governs disputes that concern contracts evidencing a transaction that involves interstate commerce. 9 USC § 1, *et seq*. The FAA does not create an independent basis for federal question jurisdiction. *See Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F2d 264 (7th Cir 1988). However, this court has diversity jurisdiction under 28 USC § 1332. Aero is an Oregon limited liability company with its principal place of business in Oregon; SSAC is a Delaware corporation with its principal place of business in Texas; and the amount in controversy exceeds $75,000 exclusive of interest and costs.

Further, the District of Oregon is a proper venue for Aero's application to vacate the award. The venue provisions of the FAA are permissive for confirmation or *vacatur* of an arbitration award. *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 US 193 (2000). This means that a motion for *vacatur* of an arbitration award may be filed in any district where the award was made or where venue is proper under the general venue statute. *Id* at 204. In addition, in its contracts with SSAC, Aero agreed to arbitrate in Texas, but expressly retained the right to seek confirmation or *vacatur* of an award in "any court having jurisdiction."

## II.     New and Independent Cause Action.

Aero's motion to vacate in this court is a new, separate cause of action, wholly independent from the Texas state court actions that addressed only the arbitrability of Aero's claims. Indeed, section 10 of the FAA creates a separate cause of action to vacate an arbitration award. 9 USC § 10; *see also Cortez*, 529 US at 200-04 (recognizing that under § 10, motions begin a separate proceeding and that venue is not limited to the district of the arbitration). Even when a party initially files a lawsuit subject to arbitration in state court, that party does not waive its right to file a subsequent action to confirm (or vacate) an arbitration award in federal court. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Moore*, 2006 WL 466652, at *1 (9th Cir Feb. 24, 2006). The Supreme Court has also held that an order compelling arbitration and dismissing non-arbitrable claims is a final, appealable order, notwithstanding the possibility of a subsequent action to confirm or vacate. *See Green Tree Fin. Corp.– Ala. v. Randolph*, 531 US 79, 86-87 (2000).

Accordingly, Aero's motion action to vacate the arbitration award is wholly independent of any Texas action filed by Aero in which SSAC successfully sought to compel arbitration and

now seeks to confirm the arbitration award.. Even thought Aero commenced those state court actions for relief on the underlying claims, it may bring this separate proceeding in this court to vacate the arbitration award. *See Cortez*, 529 US at 197-204.

### III.     Propriety of Staying a State Court's Exercise of Jurisdiction

SSAC argues that whether or not this court has jurisdiction, it has no authority to stay the state court proceedings in Texas, citing the Anti-Injunction Act which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 USC § 2283. Exceptions to the Anti-Injunction Act must be construed narrowly. *Lou v. Belzberg*, 834 F2d 730, 739 (9th Cir 1987), *cert denied*, 485 US 993 (1988).

In response, Aero implies that the FAA expressly authorizes a stay, relying on the following provision:

> For the purposes of the motion [to vacate, modify, or correct an arbitration award] any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

9 USC § 12.

It is far from clear that this provision authorizes a federal court to enjoin an earlier-filed state court action. Instead, it appears to merely allow a court to enter a stay of an application to confirm an award if it was also the court previously authorized to stay the proceedings. Neither party has found a case in which a federal court either stayed or declined to stay state court

proceedings to confirm an arbitration award under 9 USC § 12.[1]  However, this court need not decide that issue because, as discussed below, it concludes that it should abstain from exercising jurisdiction.

## IV.    Abstention from Exercising Jurisdiction

Despite the pendency of an action in state court, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colorado River Water Conservation Dist. v. United States*, 424 US 800, 817 (1976).  Abstention from the exercise of federal jurisdiction is considered "'an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'"  *Id* at 813, quoting *County of Allegheny v. Frank Mashuda Co.*, 360 US 185, 188 (1959).  Unlike other forms of abstention, *Colorado River* abstention is not based on weighty considerations of federal-state relations.  *Id* at 818.  Instead, it is designed to promote "wise judicial administration," and a federal court should decline to hear cases under its jurisdiction only in "*exceptional* circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  *Id* at 813, 817 (emphasis added).

In determining whether to stay federal action in favor of pending state court proceedings, a district court examines several factors:  (1) whether either court has exercised jurisdiction over a *res*; (2) the relative convenience of the forum; (3) the order in which the forums obtained jurisdiction; (4) the desirability of avoiding piecemeal litigation; (5) whether state or federal law

---

[1] SSAC contends that one federal court denied the parties' attempt to restrain a parallel state court proceeding, citing *In re Arbitration Between IFC Interconsult, AG, and Safeguard Int'l Partners, LLC*, 334 F Supp2d 777, 779 (ED Pa 2004), *aff'd* 438 F3d 298 (3rd Cir), *cert denied*, 127 S Ct 136 (2006).  However, that case sheds little light on the issue since the court simply observed that it had previously denied a TRO against the state proceeding without explanation.  The lack of reported cases may be due to state courts typically not proceeding in the face of a federal court that is willing and able to resolve a motion to vacate and arbitration award.

9 - OPINION AND ORDER

controls the decision on the merits; (6) whether the state court proceeding is adequate to protect the rights of the parties; (7) and whether the federal action was the result of forum shopping. *Id* at 818; *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 US 1, 23-26, 103 (1983); *Am. Int'l Underwriters, Inc. v. Continental Ins. Co.,* 843 F2d 1253, 1259 (9th Cir 1988). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 US at 818. The *Colorado River* factors are to be applied in a pragmatic and flexible way as part of a balancing process rather than as a "mechanical checklist." *Moses H. Cone*, 460 US at 16. "The weight to be given any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.*

On balance, as discussed below, this court concludes that the *Colorado River* factors favor abstaining from jurisdiction.

### A.     Whether Either Court has Assumed Jurisdiction Over a *Res*

The Texas state court has exercised jurisdiction over the Arbitration Award. Although an arbitration award "is not a piece of property, it is sufficiently singular in nature that courts could enter conflicting decisions regarding its confirmation," similar to the water rights decided in *Colorado River*. *NitGen Co. v. SecuGen Corp.,* 2004 WL 2303929 * 5 (ND Cal Oct. 12, 2004), citing *Vulcan Chem. Techs., Inc. v. Barker,* 297 F3d 332, 341 (4th Cir 2002). This is sufficient to satisfy the *res* analysis and weighs in favor of abstention.

### B.     Relative Convenience of the Forums

SSAC is located in Texas and both parties have counsel in Texas. It is difficult to perceive that Texas is an inconvenient forum for Aero, given that it originally filed its claims

against SSAC in Texas state court in San Antonio and agreed to arbitrate in Texas. On the other hand, Bexar County Local Rules requires the parties' Dallas counsel to appear in person at all hearings. Here, in contrast, counsel may appear by telephone. In addition, Aero is located in Oregon and both parties have counsel in Oregon. Whether to confirm or vacate the arbitration award will not require an evidentiary hearing with witnesses. Because neither forum is any more convenient than the other, this factor is neutral.

### C. Desirability of Avoiding Piecemeal Litigation

Aero's motion to vacate filed in this court mirrors SSAC's motion to confirm filed in Texas state court. However, Aero contends that a parallel Texas state court action does not exist based on its procedural posture. In a nutshell, Aero argues that SSAC's motion to confirm filed in the first lawsuit is a nullity because: (1) it was filed while a motion to modify the arbitration award was pending; (2) it was filed before the stay was lifted; and (3) Aero subsequently filed a nonsuit which, under Texas law, deprived the court of jurisdiction. Although SSAC later filed a second motion to confirm in the second lawsuit, that second lawsuit was transferred and consolidated into the stayed and dismissed first lawsuit. Aero analogizes the Texas litigation to *In re Arbitration Between IFC Interconsult, AG, and Safeguard Int'l Partners, LLC*, 334 F Supp2d 777, 780 (ED Pa 2004), *aff'd* 438 F3d 298 (3rd Cir), *cert denied*, 127 S Ct 136 (2006) where the court declined to abstain in favor of a state court case that may not have been properly reopened, even though the court would have declined to abstain in any event.

Whatever the merits of Aero's position, Judge Peden has ruled that the stay terminated with the conclusion of the arbitration and has exercised jurisdiction over the merits of SSAC's motion to confirm. As a result, if this court hears Aero's motion, then two different courts will

11 - OPINION AND ORDER

decide the same issues independently, resulting in the parties resolving their disputes in two forums. This is not so much piecemeal litigation, as duplicative litigation. *See Murphy v. Uncle Ben's, Inc.*, 168 F3d 734, 738 (5th Cir 1999). In any event, it poses a possibility of inconsistent judgments, weighing in favor of abstention.

### D.   Order in Which the Forums Obtained Jurisdiction

This factor "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 US at 21. Although the litigation between these two parties started in Texas state court, the proper focus is on the post-arbitration motions which were filed within hours of one another on the same day in both Texas and this court. With respect to the enforcement of the arbitration award, neither court has made substantial progress. The Texas state court has held a hearing on the jurisdictional issue and has set a hearing on the merits of SSAC's motion to confirm. This court has issued an ex parte order to stay, held a telephone status hearing, and held another hearing to decide SSAC's motion to vacate the ex parte stay. Because both courts have progressed to approximately the same stage and neither has yet considered the merits of SSAC's application to confirm or Aero's motion to vacate, this factor is neutral.

### E.   Whether State or Federal law Controls

The choice of law factor requires the court to balance the applicability of the FAA to the enforcement of the award, as compared to the applicability of Texas law to the underlying claims. "If the state and federal courts have concurrent jurisdiction over a claim, this factor becomes less significant." *Nakash v. Marciano*, 882 F2d 1411, 1416 (9th Cir 1989). The Texas state court has concurrent jurisdiction to apply the FAA. *Vulcan*, 297 F3d at 343. Based on the

existence of concurrent jurisdiction, the choice of law factor therefore deserves less weight than the other *Colorado River* factors.

However, it is worth noting that, pursuant to the parties' agreements, Texas law controls. Furthermore, many of Aero's arguments to vacate the arbitration award are based on claims that the arbitration panel "manifestly disregarded" Texas law on issue of arbitrability and the substantive merits of the dispute. A Texas state court is certainly well-suited to apply Texas law. However, federal courts routinely apply state law in diversity cases. *See Merritt-Chapman & Scott Corp. v. Frazier*, 289 F.2d 849, 853-54 (9th Cir), *cert denied*, 368 US 835 (1961) (absent constitutional problems or compelling policy considerations, existence of state law issues not ground to abstain). Thus, this factor is relatively neutral.

### F. Whether the State Proceeding is Adequate to Protect the Parties' Rights

Aero does not complain about the adequacy of the Texas state courts, but has expressed concern over Judge Peden's decision to proceed in the face of the ex parte stay order issued by this court. However, it does not appear that Judge Peden demonstrated a disregard for federal law, but was persuaded erroneously that this court lacked jurisdiction. Had he known that this court could properly exercise jurisdiction, he may have been less inclined to proceed. Aero also points out that unlike this court, Judge Peden does not have the assistance of law clerks who assist with legal research. However, the absence of law clerks does not lead to the inference that Judge Peden will simply rubber-stamp the arbitration award instead of giving full and careful consideration to Aero's arguments and following the applicable law. Thus, this factor weighs in favor of abstention.

///

### G.  Whether the Federal Court Action is an Attempt to Forum Shop

Aero disclaims any attempt to forum shop, contending that it is doing no more than the parties' agreement permits, that is, exercising its right in an action governed by the FAA to file an action to enforce the award in any federal court with jurisdiction. It believes that this court is the logical place for such an enforcement action. Because Aero resides in Oregon, it argues that any attempt by SSAC to enforce the award of $55,000 in attorneys' fees will ultimately require action in Oregon. In addition, Aero notes that the award provides it relief conditioned upon delivery of aircraft to customers in the Pacific Northwest, including additional relief that is further conditioned on the factual issue of whether the primary base of operations for those aircraft is within Aero's seven-state region in the Pacific Northwest.

However, Aero is not attempting to enforce the arbitration award, but is seeking to vacate it. If it is vacated, then there may be nothing to enforce in Oregon. Furthermore, SSAC contends that if the arbitration award is confirmed, it need not take any action against Aero in Oregon to collect the $55,000 attorney fee award, but can simply offset it against any future commissions payable to Aero.

More importantly, Aero seeks this forum after only after losing at every turn in Texas state court. Aero sought to avoid arbitration of its claims in the first Texas lawsuit, but its arguments were rejected by both the district and appellate courts in Texas. The arbitration panel likewise rejected Aero's arguments that its claims in the second Texas lawsuit concerning the reinstatement dispute fell outside the broad scope of the parties' agreement to arbitrate. Significantly, Aero moved the Texas Court of Appeals to stay the arbitration in part because the issues regarding the reinstatement dispute in the second Texas lawsuit were not arbitrable. The

appellate court rejected that argument, albeit without any explanation, and denied the motion to stay arbitration. Thus, Aero has filed this action after the Texas trial court, the Texas appellate court, and the arbitration panel all rejected its claim that the disputes are not arbitrable. Aero's motivation to change forums through the filing of this action is readily apparent. Thus, this factor weighs heavily in favor of abstention.

### H.     Whether the Federal Court Action is an Attempt to Avoid Adverse Rulings By a State Court

The merits of the arbitration award have never been addressed by any Texas court. However, as discussed above, Aero clearly is trying to avoid other adverse state court rulings by having this court reconsider some issues already decided in Texas. Aero's motion to vacate contends not only that the arbitrators disregarded the law and facts, but also exceeded their power to decide the reinstatement dispute. Whether the reinstatement dispute was arbitrable was raised by Aero in its motion to stay to the Texas appellate court. Although that motion was denied without explanation, it was nevertheless decided adversely to Aero. Thus, this factor also weighs in favor of abstention.

### I.     Other Considerations

Aero also points out that a decision by this court will avoid the messy procedural posture of any decision by the Texas state court. If the Texas state court confirms the arbitration award, the validity of its order may be questionable and will certainly give rise to an appeal by Aero. However, Aero is partly responsible for the procedural posture of the Texas state court case by filing a nonsuit of the first Texas case. More importantly, even if this court does not abstain, the status of the Texas litigation also will complicate and taint any appeal from this court's ruling.

Aero further contends that under 9 USC § 9, a motion to vacate has priority over a motion to confirm and that the former should be fully and finally resolved before the latter is considered. However, the statute states only that an order confirming an award must be granted "unless the award is vacated, modified, or corrected." In opposition to SSAC's motion to confirm in Texas state court, Aero will (if it has not already) contend that the award should not be confirmed, but should be vacated. Thus, in the process of deciding whether to confirm the award, the court will have to first decide whether to vacate, modify or correct it. The statute does not require this court to decide a contested motion to vacate before a state court decides a contested motion to confirm.

**J.    Conclusion**

Until February 14, 2007, the parties litigated their dispute in Texas state court and before an arbitration panel in Texas. When Aero lost critical issues in the arbitration, it undertook a strategy to bypass Texas state court. Only in unusual circumstances will a federal court will abstain from exercising jurisdiction. In *Vulcan*, those unusual circumstances involved "a state court which had already entered judgment on the exact issue to be considered by the federal court before the federal court had even heard argument in the case." *Vulcan*, 297 F3d at 333-34; *also see Hinman v. Fujitsu Software Corp.*, 2006 WL 358073 (ND Cal Feb.13, 2006). In contrast, the Texas state court has not yet entered a judgment on SSAC's motion to confirm. That is an important distinction, but it exists only because Aero's tactics have managed to delay any decision by the Texas state court. Had Aero not filed this action, the Texas state court could easily have entered a judgment on SSAC's application to confirm the arbitration award by now.

Aero further contends that under 9 USC § 9, a motion to vacate has priority over a motion to confirm and that the former should be fully and finally resolved before the latter is considered. However, the statute states only that an order confirming an award must be granted "unless the award is vacated, modified, or corrected." In opposition to SSAC's motion to confirm in Texas state court, Aero will (if it has not already) contend that the award should not be confirmed, but should be vacated. Thus, in the process of deciding whether to confirm the award, the court will have to first decide whether to vacate, modify or correct it. The statute does not require this court to decide a contested motion to vacate before a state court decides a contested motion to confirm.

**J.    Conclusion**

Until February 14, 2007, the parties litigated their dispute in Texas state court and before an arbitration panel in Texas. When Aero lost critical issues in the arbitration, it undertook a strategy to bypass Texas state court. Only in unusual circumstances will a federal court will abstain from exercising jurisdiction. In *Vulcan*, those unusual circumstances involved "a state court which had already entered judgment on the exact issue to be considered by the federal court before the federal court had even heard argument in the case." *Vulcan*, 297 F3d at 333-34; *also see Hinman v. Fujitsu Software Corp.*, 2006 WL 358073 (ND Cal Feb.13, 2006). In contrast, the Texas state court has not yet entered a judgment on SSAC's motion to confirm. That is an important distinction, but it exists only because Aero's tactics have managed to delay any decision by the Texas state court. Had Aero not filed this action, the Texas state court could easily have entered a judgment on SSAC's application to confirm the arbitration award by now.

None of the relevant factors weighs against abstention. And even without a prior judgment by a state court, at least one other court, *Nitgen Co., supra*, has abstained from exercising jurisdiction under circumstances very similar to those in this case. After reviewing all of the relevant factors applicable to *Colorado River*'s "exceptional circumstances" test, this court finds that abstention is appropriate. Since Aero is contesting the jurisdiction of the Texas state court, a stay of these proceedings, rather than a dismissal, is more appropriate.

## ORDER

Defendant's Motion to Vacate Ex Parte Order and Stay Proceedings (docket #10) is GRANTED and this case is STAYED pending a final judgment in the Texas state court on all of the issues before that court. While this action is stayed, defendant shall file a written status report with the court every 60 days, commencing May 14, 2007.

DATED this 13th day of March, 2007.

/s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge

17 - OPINION AND ORDER